**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 24-cv-01377-NYW

ESPERANZA VILLATORO FUENTES,

     Petitioner,

v.

JOHNNY CHOATE,
ARTHUR WILSON JR,
ALEJANDRO MAYORKAS,
PATRICK LECHLEITNER, and
MERRICK GARLAND,

     Respondents.

---

## ORDER

---

     This matter is before the Court on the Verified Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief, [Doc. 1], and Petitioner's Motion for Temporary Restraining Order, [Doc. 3].  Respondents have filed a combined response, [Doc. 13], and Petitioner has replied, [Doc. 17].[1]  The Court has reviewed the Petition, the Motion, and the related briefing, and the applicable case law.  No Party has requested a hearing on the matter, and the Court finds that oral argument would not materially assist

---

[1] After close of business on June 4, 2024, Respondents filed an opposed Motion for Leave to File a Five-Page Surreply, seeking to address what Respondents characterize as new arguments made in Petitioner's reply brief.  [Doc. 18].  Recognizing the significance of the jurisdictional arguments in this case, the Court ordered Respondents to file their proposed surreply by June 10, 2024, [Doc. 19], and Respondents did so, [Doc. 20].  The Court finds that it can rule on the Petition and Motion without the benefit of a surreply and respectfully **DENIES** the  Motion for Leave to File a Five-Page Surreply **as moot**.

in the resolution of these matters.  For the following reasons, the Motion for Temporary Restraining Order is **DENIED** and the Petition is **DISMISSED without prejudice**.

### BACKGROUND[2]

Petitioner Esperanza Villatoro Fuentes ("Petitioner" or "Ms. Villatoro Fuentes") is a transgender woman and a citizen of El Salvador.  [Doc. 1 at ¶¶ 1, 21].[3]  During her time in El Salvador, she experienced targeted physical, emotional, and sexual abuse due to her gender expression, gender identity, and sexual orientation.  [*Id.* at ¶¶ 21–22].

In 2010, Ms. Villatoro Fuentes entered the United States for the first time.  [*Id.* at ¶ 24].  She was ordered removed and deported to El Salvador that same year.  [*Id.*; Doc. 6 at 26].  After returning to El Salvador, she continued to experience severe physical, sexual, and psychological harm.  [Doc. 1 at ¶ 24].  She re-entered and was removed from the United States a few more times, and most recently re-entered the country in 2022. [*Id.* at ¶ 25; Doc. 13-1 at ¶¶ 7–13].  After arriving, she was apprehended by the United States Border Patrol, and the Department of Homeland Security ("DHS") reinstated her removal order; however, Petitioner was released from custody "on an Alternative to Detention (ATD) program."  [Doc. 1 at ¶ 31; Doc. 13-1 at ¶¶ 14–15].  In October 2022, she was involved in a "domestic dispute" with her partner and was subsequently charged with assault and battery offenses; this led to her termination from the ATD program.  [Doc.

---

[2] The Court draws these facts primarily from the Verified Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief.  [Doc. 1].  However, to fill in gaps and for purposes of clarity, the Court also draws facts from the Declaration of Abraham Cabuag, a Supervisory Detention and Deportation Officer for the United States Department of Homeland Security ("Officer Cabuag").  [Doc. 13-1 at ¶ 1].

[3] Ms. Villatoro Fuentes's sex assigned at birth was male.  Although she has not yet legally changed her name, she uses the first name Esperanza and she/her pronouns.  [Doc. 1 at 1 n.1].  The Court refers to her accordingly.

1 at ¶ 26; Doc. 13-1 at ¶ 16].  She is currently in the custody of U.S. Immigration and Customs Enforcement ("ICE").  [Doc. 1 at ¶ 32; Doc. 13-1 at ¶¶ 16–17].[4]

*Petitioner's Withholding-Only Proceedings.*  In January 2023, the United States Citizenship and Immigration Services ("USCIS") conducted a reasonable fear interview and concluded that Petitioner has a reasonable possibility of facing persecution if she returns to El Salvador.  [Doc. 1 at ¶ 33; Doc. 13-1 at ¶ 19; Doc. 6 at 6].  USCIS referred Petitioner's case to the Immigration Court.  [Doc. 13-1 at ¶ 19].  Petitioner originally proceeded before the immigration judge without counsel, *see* [*id.* at ¶¶ 21–35], but was subsequently appointed counsel, who entered an appearance in December 2023, [*id.* at ¶¶ 35, 37].  The immigration judge set the case for a final hearing for January 22, 2024, but the hearing did not go forward because ICE did not produce Petitioner for the hearing. [Doc. 1 at ¶ 50; Doc. 13-1 at ¶¶ 37, 40].  The immigration judge later set the case for a final hearing for August 12, 2024.  [Doc. 1 at ¶ 51; Doc. 13-1 at ¶ 43].

*Petitioner's Disabilities and Confinement.*  Petitioner was originally detained by ICE in Bowling Green, Virginia, [Doc. 1 at ¶ 32], but in March 2023, she was transferred

---

[4] It is not entirely clear to the Court how long Ms. Villatoro Fuentes has been detained in ICE custody.  Petitioner alleges that "ICE detained [her] on May 12, 2022 in Bowling Green, Virginia and she has remained in custody since that time."  [Doc. 1 at ¶ 32]; *see also* [*id.* at ¶ 1 ("ICE's incarceration of Ms. Villatoro Fuentes began 734 days ago and has no end in sight."); Doc. 6 at 5 (listing Petitioner's date of detention as 05/12/22)].  But Petitioner also asserts that "[i]n October 2022, Ms. Villatoro Fuentes and her partner experienced a domestic dispute," which led to her state charges.  [Doc. 1 at ¶ 26]; *see also* [Doc. 6 at 69 (Disposition Notice for Petitioner's state charges, listing the offense date as 10/23/2022)].  In addition, Officer Cabuag's declaration states that "[o]n October 27, 2022, Petitioner was terminated from ATD after she was arrested by the Henrico County Police Department in Henrico, Virginia" and that she was taken into state custody on those charges.  [Doc. 13-1 at ¶ 17].  He also states that she was convicted of the state charges in January 2023 and was released from state custody and taken into ICE custody that same month.  [*Id.* at ¶ 18].

to an ICE detention center in Aurora, Colorado, where she was primarily detained with other transgender women, [*id.* at ¶¶ 35–36].

Ms. Villatoro Fuentes has a "history of complex trauma and psychiatric disabilities" and has been diagnosed with gender dysphoria; post-traumatic stress disorder, chronic with dissociative symptoms; bipolar I disorder; and generalized anxiety disorder.  [*Id.* at ¶27; Doc. 6 at 41–42].  She reports that, in early 2023, her "mental health began rapidly deteriorating."  [Doc. 1 at ¶ 34].  When Petitioner is confined in small spaces, she experiences panic and fear, which "results in 'increased perceptual disturbances (seeing visions, hearing voices),'" such as "experiencing 'demons violating her.'"  [*Id.* (quoting Doc. 6 at 36)].  She has also experienced days-long vivid delusions and audio-visual hallucinations.  [*Id.* at ¶ 37].  She has reported suicidal ideation, which led to her being placed on suicide watch, and has repeatedly engaged in self-harm behaviors while in custody.  [*Id.* at ¶ 36].

Petitioner attempted suicide in December 2023.  [*Id.* at ¶ 38; Doc. 6 at 36].  She was subsequently transferred to the El Paso Behavioral Health System in Texas for psychiatric hospitalization.  [Doc. 1 at ¶ 39].  There, she was misgendered and denied gender affirming clothing and hygiene products, which caused her to again engage in self-harm.  [*Id.*; Doc. 6 at 36].  She was returned to the Aurora detention center on February 8, 2024.  [Doc. 13-1 at ¶ 41].

After her return from Texas, Aurora facility staff regularly misgendered Petitioner and made disrespectful comments to her. [Doc. 1 at ¶ 41].  On March 27, 2024, Petitioner formally requested release from detention, which ICE denied on April 17, 2024.  [*Id.* at ¶ 40; Doc. 6 at 109]. Petitioner was placed on suicide watch on April 26, 2024, after

engaging in self-harm.  [Doc. 1 at ¶ 41; Doc. 6 at 100].  She explains that her mental state is severely dysregulated, "which is reflected in her behavior," and she states that she has been placed in solitary confinement as punishment "for conduct that is directly linked to her disabilities."  [Doc. 1 at ¶ 41].  Another request for Petitioner's release was denied by ICE on May 3, 2024.  [*Id.* at ¶ 42; Doc. 6 at 113–14].

*Petitioner's Current Placement.*  Petitioner remained in solitary confinement in the Aurora facility through May 13, 2024.  [Doc. 1 at ¶ 43].  On May 14, 2024, Petitioner's counsel was informed by an ICE officer that ICE had decided to transfer Ms. Villatoro Fuentes back to the El Paso Behavioral Health System.  [*Id.*].  Petitioner informed counsel that she did not wish to be transferred to El Paso because "conditions were even worse there than in the Aurora facility."  [*Id.*].  Counsel immediately notified ICE and the United States Attorney's Office for the District of Colorado that Ms. Villatoro Fuentes did not want to be transferred, [*id.* at ¶¶ 43–44], but this did not stop Petitioner's transfer.  Petitioner was transferred to "Florence, Arizona, a staging facility in route to El Paso Behavioral Health System," on May 14, 2024, and was transferred from Arizona to the El Paso Behavioral Health System on May 16, 2024 "to receive a higher level of mental health treatment."  [Doc. 13-1 at ¶¶ 44–45].

At 9:45 P.M. on May 15, 2024, Petitioner filed her Verified Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief (the "Petition" or "Complaint").  [Doc. 1].  This filing purports to be both seek habeas corpus relief under 28 U.S.C. § 2241 and raise substantive civil claims for declaratory and injunctive relief, asserting three counts:  (1) a Fifth Amendment due process claim; (2) a claim under the Rehabilitation Act; and (3) a claim under the Administrative Procedures Act.  [*Id.* at 52–

54].  She requests that the Court order her immediate release from custody or, in the alternative, that the Court order Respondents to conduct a bond hearing for Petitioner; that the Court enjoin her from being transferred outside of the District of Colorado or order that she be returned to the District of Colorado; that the Court enjoin Respondents from placing her in solitary confinement; and declare that her detention violates the Rehabilitation Act.  [*Id.* at 54–55].  She subsequently filed the Motion for Temporary Restraining Order, wherein she requests that the Court order her "immediate release from ICE custody," or, in the alternative, order "Respondents to return her to the District of Colorado."  [Doc. 3 at 2].

## LEGAL STANDARDS

### I.    Habeas Corpus Relief

Section 2241 of Title 28 authorizes a court to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  Habeas corpus proceedings under 28 U.S.C. § 2241 "remain available as a forum for statutory and constitutional challenges to post-removal-period detention."  *Singh v. Choate*, No. 23-cv-02069-CNS, 2024 WL 309747, at *1 (D. Colo. Jan. 26, 2024) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001)); *see also Hernandez-Ceren v. Wolf*, No. 20-cv-01628-RM, 2020 WL 3036074, at *1 (D. Colo. June 6, 2020) ("[A] person subject to removal is in custody for habeas purposes.").

The writ of habeas corpus is designed to challenge "the fact or duration" of a person's confinement.  *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).  "In other words, habeas corpus, and thus § 2241, offers detainees release from custody when the very

fact that they are detained, or detained for a certain length of time, is unlawful." *Codner v. Choate*, No. 20-cv-01050-PAB, 2020 WL 2769938, at *4 (D. Colo. May 27, 2020).

## II.    Temporary Restraining Order

To obtain a temporary restraining order, the moving party must establish "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest." *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quotation omitted); *see also Wiechmann v. Ritter*, 44 F. App'x 346, 347 (10th Cir. 2002) (the standard for a temporary restraining order is the same as the standard for a preliminary injunction).  A party seeking an injunction must demonstrate that "*all four* of the equitable factors weigh in its favor," *Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 888 (10th Cir. 2013), and a "plaintiff's failure to prove any one of the four preliminary injunction factors renders its request for injunctive relief unwarranted," *Vill. of Logan v. U.S. Dep't of Interior*, 577 F. App'x 760, 766 (10th Cir. 2014).

Certain types of preliminary injunctions, such as injunctions that alter the status quo or injunctions that require the nonmoving party to take some affirmative action, "are disfavored." *State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 883 (10th Cir. 2021).  To obtain a "disfavored" injunction, the moving party must "make a heightened showing of the four factors."  *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009); *Colorado v. Griswold*, 99 F.4th 1234, 1240 n.4 (10th Cir. 2024).  Because a temporary restraining order is "an extraordinary remedy never awarded as of right," *Winter v. Nat.*

*Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008), the moving party's right to relief must be clear and unequivocal, *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).

## ANALYSIS

Petitioner's initiating document purports to be both a petition for a writ of habeas corpus and a civil complaint, *see* [Doc. 1], and the Motion for Temporary Restraining Order does not clearly delineate which of her requests for injunctive relief fall into which section of her pleading, *see generally* [Doc. 3].  Having thoroughly reviewed the Motion, the Court construes it as requesting the following types of injunctive relief:  (1) an order directing her immediate release from ICE custody, or an order directing the Immigration Court to hold a bond hearing, under 28 U.S.C. § 2241, [*id.* at 7, 13–21]; (2) an order directing her immediate release from ICE custody as a reasonable accommodation for her disability under Section 504 of the Rehabilitation Act, [*id.* at 10–13]; (3) an order directing that she be transferred back to the Aurora detention facility in Colorado as a reasonable accommodation under the Rehabilitation Act, [*id.* at 21–30]; and (4) an order directing that she be transferred back to the Aurora detention facility in Colorado pursuant to the injunction issued in *Orantes-Hernandez v. Meese*, 685 F. Supp. 1488 (C.D. Cal. 1988) ("*Orantes I*"), and modified in *Orantes-Hernandez v. Gonzales*, 504 F. Supp. 2d 825 (C.D. Cal. 2007) ("*Orantes II*"), [Doc. 3 at 30–31].[5]  The Court addresses these requests in turn.

---

[5] The Motion for Temporary Restraining Order is not based on the Administrative Procedures Act.  *See* [Doc. 3].  The Court thus does not discuss it in this Order.

## I.      Habeas Relief under 28 U.S.C. § 2241

First, Petitioner argues that the Court should order her release pursuant to its "independent authority under habeas corpus, 28 U.S.C. § 2241, to order the immediate release of detained persons from unconstitutional confinement." [Doc. 3 at 7]. This request is based on her position that her continued detention violates her Fifth Amendment due process rights, and with respect to her constitutional claim, she addresses each preliminary injunction factor, arguing that they all weigh in her favor. [*Id.* at 7–10, 13–21]. Respondents, however, contend that this Court lacks jurisdiction over the habeas Petition because Petitioner was no longer confined in Colorado at the time the Petition was filed on May 15, 2024. [Doc. 13 at 5–6]; *see also* [Doc. 1 at ¶ 44 ("On May 15, 2024, [Petitioner's] counsel . . . was . . . notified that ICE transferred Ms. Villatoro Fuentes via ICE Air to Florence, Arizona and intend to take her to El Paso, Texas tomorrow, May 16, 2024.")]; [Doc. 13-1 at ¶¶ 44–45 ("On May 14, 2024, Petitioner was transferred to Florence, Arizona, a staging facility in route to El Paso Behavioral Health System. On May 16, 2024, Petitioner was transferred from Arizona to the El Paso Behavioral Health System to receive a higher level of mental health treatment.")].

### A.      The Immediate Custodian Rule

The federal habeas statute provides that the proper respondent to a habeas petition is "the person who has custody over [the petitioner]." 28 U.S.C. § 2242; *see also id.* § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained"). These provisions have long been interpreted to refer to the "person who has the *immediate custody* of the party detained, with the power to produce the body of such party before the court or judge." *Rumsfeld v. Padilla*, 542 U.S.

426, 435 (2004). Therefore, "for core habeas petitions challenging present physical confinement, jurisdiction lies only in one district:  the district of confinement." *Id.* at 443; *see also United States v. Scott*, 803 F.2d 1095, 1096 (10th Cir. 1986) ("A § 2241 petition for a writ of habeas corpus must be addressed to the federal district court where the [petitioner] is confined.").  "[T]he default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official."  *Padilla*, 542 U.S. at 435.  Jurisdiction is determined at the time the habeas petition is filed.  *Serna v. Commandant, USDB-Leavenworth*, 608 F. App'x 713, 714 (10th Cir. 2015); *Golding v. Sessions*, No. 1:18-cv-03036-RJS, 2018 WL 6444400, at *2 (S.D.N.Y. Dec. 6, 2018).

Petitioner argues that this Court nevertheless has jurisdiction over her Petition. She first frames the issue before the Court as one of proper *venue*, arguing that "[v]enue for immigration habeas petitions is dictated by *Braden v. 30th Judicial Circuit Court of Ky.*, which used traditional venue considerations to determine habeas jurisdiction," [Doc. 17 at 2], and that "traditional venue factors dictate that the District of Colorado is the only proper venue for [her] case," [*id.* at 3].  She then argues that *Padilla*'s default rule "does not apply to immigration detention habeas petitions" because it "expressly declined to extend its rule to habeas petitions by noncitizens."  [*Id.* at 3–4].

In *Braden*, a non-immigration case, an Alabama prisoner sought a writ of habeas corpus in the District Court for the Western District of Kentucky, challenging a detainer issued against him in Kentucky state court.  *Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 485 (1973).  The Supreme Court held that the Western District of Kentucky had jurisdiction over the habeas action, despite the prisoner's confinement in Alabama,

because the prisoner was effectively "in custody" in Kentucky by virtue of the detainer. *Id.* at 489 n.4. It explained: "The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Id.* at 494–95. The proper respondent was thus not the prisoner's immediate physical custodian, "but was instead the Kentucky court in which the detainer was lodged." *Padilla*, 542 U.S. at 438. As the Supreme Court later explained, "[t]his made sense because the Alabama warden was not the person who held him in what was alleged to be unlawful custody." *Id.* (cleaned up).

The Court respectfully disagrees with Petitioner's contention that, pursuant to *Braden*, the Court's analysis should be nothing more than a traditional venue assessment, though it acknowledges that the distinction between proper venue, the proper respondent in a habeas case and the Court's jurisdiction over the respondent, and "habeas jurisdiction" appears to often blur. *See, e.g.*, *S.N.C. v. Sessions*, 325 F. Supp. 3d 401, 407–08 (S.D.N.Y. 2018) ("It is unclear whether this [immediate custodian] limitation refers to personal jurisdiction, venue, or some sort of *sui generis* 'habeas jurisdiction.'"); *Padilla*, 542 U.S. at 434 n. 7 ("The word 'jurisdiction,' of course, is capable of different interpretations. We use it in the sense that it is used in the habeas statute, 28 U.S.C. § 2241(a), and not in the sense of subject-matter jurisdiction of the District Court."). But the Court does not read *Braden* as having "used traditional venue considerations to determine habeas jurisdiction," as Petitioner suggests. [Doc. 17 at 2]. To be sure, in that case, the Supreme Court acknowledged that, using "traditional venue considerations," the Western District of Kentucky was "almost surely the most desirable forum for the adjudication of the claim." *Braden*, 410 U.S. at 493. But the Court did not rest its holding

on a traditional venue analysis.  Rather, the *Braden* Court's decision was based on the statutory language:

> Read literally, the language of § 2241(a) requires nothing more than that the court issuing the writ have jurisdiction over the custodian.  So long as the custodian can be reached by service of process, the court can issue a writ 'within its jurisdiction' requiring that the prisoner be brought before the court for a hearing on his claim, or requiring that he be released outright from custody, even if the prisoner himself is confined outside the court's territorial jurisdiction.

*Id.* at 495.  The Court went on to overrule *Ahrens v. Clark*, 335 U.S. 188 (1948), a case that "indicat[ed] that the prisoner's presence within the territorial confines of the district is an invariable prerequisite to the exercise of the District Court's habeas corpus jurisdiction."  *Braden*, 410 U.S. at 495.

In *Padilla*, the Supreme Court later explained that *Braden* stands for the proposition that "a habeas petitioner who challenges a form of 'custody' other than present physical confinement may name as respondent the entity or person who exercises legal control with respect to the challenged 'custody.'"  *Padilla*, 542 U.S. at 438; *see also Singh v. Wolf*, No. 2:20-cv-00062-MTL, 2020 WL 4455468, at *4 n.1 (D. Ariz. Mar. 31, 2020) ("In light of *Padilla*, *Braden* stands for the unremarkable proposition that where the custodian and the petitioner are not in the same jurisdiction, then the jurisdiction where the custodian may be served (without benefit of long-arm service) is the only possible and proper jurisdiction."), *report and recommendation adopted*, 2020 WL 2611208 (D. Ariz. May 22, 2020).  "[N]othing in *Braden* supports departing from the immediate custodian rule in the traditional context of challenges to present physical confinement. . . .  To the contrary, *Braden . . . reiterated the traditional rule* that a prisoner seeking release from confinement must sue his 'jailer.'"  *Padilla*, 542 U.S. at 438

(emphasis added).   The Court thus disagrees that *Braden* provides some different authoritative test for venue that obviates the Court's obligation to follow *Padilla*.

In the alternative, Ms. Villatoro Fuentes contends that the *Padilla* default rule does not apply in the immigration habeas context because the *Padilla* Court "expressly declined to extend its rule to habeas petitions by noncitizens." [Doc. 17 at 4]. This argument mischaracterizes *Padilla*, which expressly "*left open*" the question of whether the default rule applies in the immigration context, as that issue was not before the Court. *Padilla*, 542 U.S. at 435 n.8 (emphasis added). "[F]ootnote 8 of the *Padilla* opinion . . . does not mean that the Court suggested that it would apply a different line of reasoning in the immigration context.   Instead the Court merely declined to address the question because the issue was not before it." *Sow v. Whitaker*, No. 1:18-cv-11394-GBD-RWL, 2019 WL 2023752, at *3 (S.D.N.Y. May 8, 2019) (quotation omitted and ellipses in original).  And indeed, the *Padilla* Court's instruction that the immediate custodian rule is the *default rule* suggests that to this Court the immediate custodian rule applies in *all* contexts, including the immigration habeas context, unless some delineated exception applies.

While neither the Supreme Court nor the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") have expressly held that the immediate custodian rule applies in immigration habeas cases, the majority of district courts addressing this question have held that the rule applies to "core" immigration habeas cases.[6]  *See, e.g.*,

---

[6] "Core" habeas challenges are those challenges to present physical confinement, *see Sanchez v. Decker*, No. 1:19-cv-08354-RA, 2019 WL 6311955, at *2 (S.D.N.Y. Nov. 25, 2019), while "non-core" challenges are 'challenges to forms of custody other than physical confinement, including orders of removal,'" *Singh v. Decker*, No. 1:20-cv-09089-JPC, 2021 WL 23328, at *3 (S.D.N.Y. Jan. 4, 2021) (quoting *Heller v. Barr*, No. 1:19-cv-04003-

*da Silva v. Nielsen*, No. 5:18-mc-00932, 2019 WL 13218461, at *5 (S.D. Tex. Mar. 29, 2019) ("[T]he vast majority of lower courts . . . have continued to apply the immediate custodian rule in immigration habeas cases."); *Alfaro-Ramirez v. Current or Acting Field Off. Dir.*, No. 3:24-cv-00817-RFL, 2024 WL 1861011, at *1 (N.D. Cal. Apr. 29, 2024); *Deng v. Crawford*, No. 2:20-cv-00199-RAJ-DEM, 2020 WL 6387010, at *4 (E.D. Va. Sept. 30, 2020), *report and recommendation adopted*, 2020 WL 6387326 (E.D. Va. Oct. 30, 2020); *Lucas R. v. Azar*, No. 2:18-cv-05741-DMG-BFM, 2018 WL 10483438, at *5 (C.D. Cal. Sept. 6, 2018); *Phrance v. Johnson*, No. 1:14-cv-03569-TPG, 2014 WL 6807590, at *2 (S.D.N.Y. Dec. 3, 2014).

Petitioner cites to, but does not substantively discuss, *Castillo-Hernandez v. Longshore*, 6 F. Supp. 3d 1198 (D. Colo. 2013), a case in which another court in this District held that the immediate custodian rule did not apply to the petitioner's habeas petition.  *See* [Doc. 17 at 4].  *Castillo-Hernandez* is distinguishable from this case.  In *Castillo-Hernandez*, the petitioner was denied a bond hearing by an immigration judge on the grounds that he was subject to mandatory detention under 8 U.S.C. § 1226(c). *Castillo-Hernandez*, 6 F. Supp. 3d at 1201.  He raised two arguments in his petition:  first, that the Board of Immigration Appeals's interpretation of § 1226(c) was erroneous and he was, in fact, entitled to a bond hearing, and second, the statute as applied violated his constitutional rights.  *Id.*

---

ER, 2019 WL 2223183, at *1 (S.D.N.Y. May 22, 2019)).  Petitioner does not argue that this is not a "core" habeas case.  *See* [Doc. 3; Doc. 17]; *see also Singh v. Decker*, 2021 WL 23328, at *3 ("Singh's challenge to the lawfulness of ICE's custody of him, seeking his immediate release, is a challenge to his physical detention.  Singh's request for a bond hearing before the IJ similarly is a 'core' challenge, as it directly concerns his physical detention and may ultimately result in his release from such detention.").

The *Castillo-Hernandez* court "[began] its analysis by noting an important distinction between the relief requested in *Padilla* and the relief requested" in that case: while the petitioner in *Padilla* sought immediate release from custody, the *Castillo-Hernandez* petitioner's "principal request [was] that [the court] direct an [immigration judge] to conduct a bond hearing . . ., which hearing might result in his release." *Castillo-Hernandez*, 6 F. Supp. 3d at 1208–09. The court then discussed "the historical development of the [habeas] doctrine in the immigration context," noting that "in the immigration context, habeas is often a vehicle used to afford an immigrant access to consideration for discretionary relief." *Id.* at 1210. And because the petitioner was requesting discretionary relief in the form of a bond hearing, the *Castillo-Hernandez* court concluded that "practical considerations . . . dictate[d]" against the court "mechanically apply[ing] the immediate custodian rule," as "a jailer has never been recognized as possessing the authority to consider granting an immigrant some sort of discretionary relief, and no such authority has ever been created through regulation." *Id.* (quotation omitted); *see also id.* at 1204 ("[T]his Court . . . concludes that the immediate custodian rule does not apply in the immigration detention context, *at least under the unique circumstances of this case*." (emphasis added)). Notably, the court's conclusion was limited to the petitioner's statutory challenge, with the court noting that the petitioner's constitutional challenge "appear[ed] to be closer to the challenge raised by the petitioner in *Padilla*," but ultimately declining to decide that issue. *Id.* at 1211 & n.15.

*Castillo-Hernandez* is meaningfully distinct from this case, where Ms. Villatoro Fuentes challenges the very fact of her present confinement on constitutional grounds and, like the petitioner in *Padilla*, asks this Court to order her immediate release. And in

any event, while the Court has the utmost respect for the judicial officers in this District, the Court is not bound by their decisions.  *United States v. Rhodes*, 834 F. App'x 457, 462 (10th Cir. 2020).  The Court is persuaded by the majority of district courts holding that the *Padilla* default rule applies in the immigration habeas context, as Petitioner identifies "no principled basis to distinguish habeas petitions challenging immigration detention from those challenging criminal custody."  *Rivera-Trigueros v. Becerra*, No. 3:23-cv-05781-RFL, 2024 WL 1129880, at *3 (N.D. Cal. Mar. 14, 2024); *see also Lucas R. v. Azar*, No. 2:18-cv-05741-DMG-BFM, 2018 WL 10483438, at *5 (C.D. Cal. Sept. 6, 2018) ("[T]he absence of direct controlling authority is not a persuasive reason to depart from *Padilla*'s 'default rule.'").

### B.      Exceptions to the Immediate Custodian Rule

Petitioner next argues that even if the immediate custodian rule applies here, "[t]he circumstances of [her] petition also fall into *Padilla*'s many recognized exceptions."  [Doc. 17 at 4].  However, Ms. Villatoro Fuentes does not identify these "many recognized exceptions" or explain which ones apply here.  *See* [*id.*].  Instead, she asserts that all nine justices "recognized exceptions to the rule based on 'unique facts' that go beyond 'a simple challenge to physical custody.'"  [*Id.* (quoting *Padilla*, 542 U.S. at 441)].  But the *Padilla* majority did not recognize any exception based on a case's "unique facts."  The portion of *Padilla* quoted in Petitioner's reply shows that the Supreme Court *rejected* the petitioner's "request for a new exception to the immediate custodian rule based upon the 'unique facts' of this case."  *Padilla*, 542 U.S. at 441; *see also id.* at 447–50 ("Justice Stevens' dissent . . . rests on the mistaken belief that we have made various exceptions to the immediate custodian and district of confinement rules whenever 'exceptional,'

'special,' or 'unusual' cases have arisen. . . .  If Justice Stevens' view were accepted, district courts would be consigned to making ad hoc determinations as to whether the circumstances of a given case are 'exceptional,' 'special,' or 'unusual' enough to require departure from the jurisdictional rules this Court has consistently applied.  We do not think Congress intended such a result.").

In all, the *Padilla* decision mentioned three exceptions to the immediate custodian rule—two "recognized" and one "proposed."  *See id.* at 435–36.  The first is a recognized exception in the military context "where an American citizen is detained outside the territorial jurisdiction of any district court."  *Id.* at 436 n.9.  Second, the Supreme Court acknowledged the "simple proposition that the immediate physical custodian rule, by its terms, does not apply when a habeas petitioner challenges something other than his present physical confinement," *id.* at 438, i.e., what many courts reference as "non-core" cases, *e.g.*, *Singh v. Decker*, No. 1:20-cv-09089-JPC, 2021 WL 23328, at *3 (S.D.N.Y. Jan. 4, 2021); *see also da Silva*, 2019 WL 13218461, at *5 (stating that "[t]he Supreme Court has recognized only two exceptions to this immediate custodian rule"—the military exception and cases where the petitioner does not challenge her present physical confinement).  And finally, in his concurrence, Justice Kennedy proposed an exception that would exist "if there is an indication that the Government's purpose in removing a [detainee] were to make it difficult for his lawyer to know where the habeas petition should be filed, or where the Government was not forthcoming with respect to the identity of the custodian and the place of detention."  *Padilla*, 542 U.S. at 454 (Kennedy, J., concurring).[7]

---

[7] Justice Kennedy's concurrence also mentioned exceptions based on nonphysical custody, dual custody, or the "removal of the [detainee] from the territory of a district after

Petitioner does not expressly argue that either of the two recognized exceptions apply to her case.  At best, she argues that a "unique facts" exception applies here because she "has been temporarily transferred to a psychiatric facility while continuing to have all meaningful decisions regarding her custody overseen in the original district." [Doc. 17 at 4].  Petitioner, however, cites no caselaw establishing an exception to the default rule when a petitioner files her petition when she is only temporarily transferred outside of the district where she is primarily housed, or an exception to the default rule based on where the petitioner's immigration proceedings are occurring.  Courts have continued to apply the default rule under similar circumstances.  *See Pen v. Sessions*, No. 1:17-cv-10626-NMG, 2017 WL 2312822, at *1–2 (D. Mass. May 25, 2017) (the fact that the petitioner was transferred from Massachusetts to Louisiana "just before the petition was filed" did not prevent the court from concluding that it lacked jurisdiction over the petition); *Mendoza v. Muller*, No. 1:11-cv-07857-RJS, 2012 WL 252188, at *2 (S.D.N.Y. Jan. 25, 2012) ("Although Petitioner is being held in New Jersey, jurisdiction is proper in this Court *because he filed the petition while detained in New York* in connection with his immigration proceedings." (emphasis added)); *Phrance*, 2014 WL 6807590, at *2 (even though the petitioner's immigration proceedings were occurring in New York, the proper respondent was the warden of the petitioner's New Jersey detention facility). "[T]he proper respondent is the warden of the institution where [the petitioner] was confined when the petition was filed," *Pen*, 2017 WL 2312822, at *1, and the Parties appear to agree that, at the time the Petition was filed, Ms. Villatoro Fuentes was not

---

a petition has been filed."  *Padilla*, 542 U.S. at 454 (Kennedy, J., concurring).  Petitioner does not argue that any of these exceptions apply here.

detained in Colorado, but was instead in custody at an ICE "staging facility" in Arizona. [Doc. 3 at 2; Doc. 13-1 at ¶¶ 44–45]. Accordingly, Petitioner has not demonstrated that an exception to the immediate custodian rule applies to her case.[8]

### C.  Petitioner's Immediate Custodian

Petitioner next argues that if the immediate custodian rule applies, "the only immediate custodians with the power to grant Ms. Villatoro Fuentes the requested relief are immigration officials, in particular, the Acting [Denver field office director ("FOD")]." [Doc. 17 at 5]. Her argument is not specific to her case or her circumstances. She asserts that the Code of Federal Regulations gives field office directors authority to make initial custody decisions and to grant release or parole, which makes the Denver field office director the correct respondent here. [*Id.* (citing 8 C.F.R. §§ 236.1(d)(1), 241.4(a))].[9]

---

[8] The Court recognizes that a few courts have ruled that "[w]here a petitioner is held in a facility solely pursuant to a contract, rather than by the state or federal government itself, application of the immediate custodian rule must take account of that fact." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1185 (N.D. Cal. 2017), *aff'd*, 905 F.3d 1137 (9th Cir. 2018). "Instead of naming the individual in charge of the contract facility—who may be a county official or an employee of a private nonprofit organization—a petitioner held in federal detention in a non-federal facility pursuant to a contract should sue the federal official most directly responsible for overseeing that contract facility when seeking a habeas writ." *Id.*; *but see Alfaro-Ramirez*, 2024 WL 1861011, at *4 ("Crafting a special exception for wardens of private facilities undermines the text, structure, and purpose of the habeas statute. . . . The text does not require that the person be a 'federal official' or even a 'government official.'"). Although Petitioner states that the El Paso Behavioral Health System is a "non-ICE-facility hospital," [Doc. 17 at 6], Petitioner does not invoke this theory in her jurisdictional arguments, and the Court is not persuaded that this theory of jurisdiction is applicable here, given that Petitioner was detained at an ICE facility, albeit a "staging facility," at the time she filed her Petition—the relevant time for determining jurisdiction.

[9] Petitioner also argues that "ICE policy makes clear that the FOD overseeing a particular facility has the *sole* authority to authorize detention, transfer, and release, that only the FOD can 'make a return certifying the true cause of detention,' . . . and that the FOD has exclusive authority 'to produce at the hearing the body of the person detained.'" [Doc. 17 at 5 (quoting 28 U.S.C. § 2243)]. However, she does not identify any specific ICE policy. *See* [*id.*].

The Court respectfully concludes that Petitioner's argument conflates physical control and legal control, a distinction stressed by the *Padilla* Court.  *See Padilla*, 542 U.S. at 439 ("In challenges to present physical confinement, we reaffirm that the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent.").  Accepting Petitioner's argument would not only contravene numerous cases recognizing that the correct respondent in a core habeas case is the detainee's immediate *physical* custodian, but it would also widely expand the scope of habeas proceedings as they currently stand.  "The fact that a superior officer can arrange for the petitioner's release need not imply that the superior has 'custody' of the person."  *Bridges v. Chambers*, 425 F.3d 1048, 1050 (7th Cir. 2005).  Assuming that the Denver field office director has the authority to release Petitioner, "so do [his] superiors, all the way up to the President of the United States."  *Kholyavskiy v. Achim*, 443 F.3d 946, 953 (7th Cir. 2006); *see also Yi v. Maugans*, 24 F.3d 500, 507 (3d Cir. 1994) (rejecting an argument similar to Petitioner's because "[o]therwise, the Attorney General of the United States could be considered the custodian of every [non-citizen] and prisoner in custody because ultimately she controls the [field office] directors and the [facilities].").  However, the habeas statutes do not "indicate that a petitioner may choose from among an array of colorable custodians."  *Alfaro-Ramirez*, 2024 WL 1861011, at *4 (quotation omitted).  Indeed, the Supreme Court in *Padilla* emphasized that "the default rule is that the proper respondent is the warden of the facility where the [detainee] is being held, *not . . . some other remote supervisory official*."  *Padilla*, 542 U.S. at 435 (emphasis added).  Nor is there any argument or authority that these principles change if the individual is in transit at the time of the filing of her habeas petition.

It is well-settled that jurisdiction is determined at the time the petition was filed, *Serna*, 608 F. App'x at 714; *Golding*, 2018 WL 6444400, at *2, and that, under the immediate custodian rule for core habeas cases, the petitioner's immediate custodian is the person exercising immediate *physical* control over the petitioner at the time she files her petition, *Pen*, 2017 WL 2312822, at *1.  Ms. Villatoro Fuentes has not demonstrated that any of the named Respondents were exercising immediate physical control over Petitioner, and were her immediate physical custodian, at the time she filed her Petition while she was detained in Arizona.  Further, it is not this Court's duty to ascertain or identify an Arizona official who would be correctly named as a respondent in this case. Accordingly, the Court is respectfully unpersuaded by Petitioner's argument.

### D.    Practical Considerations

Finally, Petitioner discusses the perceived difficulties of filing her Petition in another district, noting that she was only detained in Arizona "for a single day," and that requiring her to file her Petition in Texas would have delayed her filing "for an unknown number of days."  [Doc. 17 at 5].[10]  She argues that requiring her to file her Petition elsewhere would "incentivize gamesmanship to circumvent [Respondents'] own policies to avoid or control litigation."  [*Id.* at 6].  In support, she asserts that the Denver field office was aware at least by May 8, 2024 that they intended to transfer her to El Paso, but they did not inform her counsel of the transfer until May 14, 2024, "as it was occurring."  [*Id.* at 6–7].

---

[10] Because Petitioner was detained in Arizona at the time she filed her Petition, and so the Court does not address Petitioner's arguments about the lack of a warden associated with the El Paso Behavioral Health System.  *See* [Doc. 17 at 6].

The Court recognizes that this case presents unusual logistical circumstances that likely hindered counsel's ability to act swiftly and still within the bounds of permissible habeas jurisdiction.   However, there is no recognized exception to the immediate custodian rule for inconvenience or exigent circumstances.  *See Singh v. Wolf*, No. 2:20-cv-00062-MTL, 2020 WL 4455468, at *7 (D. Ariz. Mar. 31, 2020) ("[T]he fact that Petitioner was transferred (even if at the eleventh hour) does not justify an exception to the traditional rule."), *report and recommendation adopted*, 2020 WL 2611208 (D. Ariz. May 22, 2020); *cf. Padilla*, 542 U.S. at 450–51 (declining to ignore well-established habeas jurisdiction rules based on the "profound importance" of the case, as "it is surely just as necessary in important cases as in unimportant ones that courts take care not to exceed their 'respective jurisdictions' established by Congress").

To the extent Petitioner argues that the exception proposed by Justice Kennedy's *Padilla* concurrence should apply here, *see* [Doc. 17 at 7 (arguing that Respondents "hid[] vital information from [Petitioner's counsel," which "merits an exception to the default jurisdictional rule)"], the Court declines to apply such an exception here, which has not been affirmatively recognized by a majority of the Supreme Court.  *See Padilla*, 542 U.S. at 448 (rejecting the notion that jurisdiction "might be premised on 'punishing' alleged Government misconduct").  Nor is there any authority from the Tenth Circuit—or weight of authority from other circuit courts—that might justify the application of such exception (however logical) by this Court.  Moreover, based on the record before it, the Court cannot conclude that there was "any attempt to manipulate" these proceedings behind Petitioner's transfer or that that Petitioner was transferred to make it more difficult for her lawyers to initiate habeas proceedings.  *Padilla*, 542 U.S. at 441; *id.* at 454 (Kennedy, J.,

concurring).   Rather, the record shows that Petitioner was transferred to the El Paso hospital, where she had previously been transferred after a different suicide attempt, [Doc. 1 at ¶ 39], "to ensure she receives the proper level of medical care," [Doc. 6 at 131].

### E.    Request to Transfer

Finally, Petitioner argues that if the Court disagrees with her on the jurisdictional issue, "the Court should transfer, rather than dismiss, this petition."  [Doc. 17 at 7].   In support, she cites *Smith v. Carter*, No. 22-cv-01929-GPG, 2022 WL 17338294 (D. Colo. Oct. 24, 2022), wherein another court in this District transferred a habeas petition to another district under 28 U.S.C. § 1631 upon concluding that the proper respondent had not been named.  *See Smith*, 2022 WL 17338294, at *1.

That statute provides that "[w]henever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action . . . could have been brought at the time it was filed or noticed."  28 U.S.C. § 1631; *see also Roman v. Ashcroft*, 340 F.3d 314, 328 (6th Cir. 2003) (concluding that "the statute applies to federal courts identifying any jurisdictional defect, regardless of whether it involves personal or subject matter jurisdiction").  The Court recognizes that many courts choose to transfer habeas cases "in the interest of justice" after finding that the wrong respondent was named.  *See, e.g.*, *Singh v. Wolf*, 2020 WL 4455468, at *12; *Quinn-Goncalves v. ICE Field Off.*, No. 1:24-cv-10653-ADB, 2024 WL 1159213, at *1 (D. Mass. Mar. 15, 2024). However, the Court is not sure that the analysis is so simple here, given the fact that Petitioner filed a joint Petition and Complaint (the propriety of which is discussed further below), and it is not clear to this Court that it lacks jurisdiction over Petitioner's purported

civil claims.  Neither Party addresses the availability of transfer in this peculiar procedural context, and the Court declines to saddle another the United States District Court for the District of Arizona with a difficult case when Ms. Villatoro Fuentes is no longer physically present there.  Accordingly, the Court cannot conclude that transfer is in the interests of justice.

For the reasons explained above, the Court respectfully agrees with Respondents on this jurisdictional issue.  Because Ms. Villatoro Fuentes was not in custody of the Aurora detention center at the time the Petition was filed, Warden Choate is not the proper respondent to her Petition and this Court lacks jurisdiction over her request for habeas relief.  Accordingly, the Petition is **DISMISSED without prejudice** for lack of jurisdiction.

## II.    Injunctive Relief under the Rehabilitation Act

In a typical habeas case, the Court's above conclusion would end the Court's analysis and the case.  However, Ms. Villatoro Fuentes's initiating document was not simply a habeas petition, but a Petition *and* "Complaint for Declaratory and Injunctive Relief."  [Doc. 1 at 1].  Ms. Villatoro Fuentes appears to base her remaining requests for relief on her independent civil claims, arguing next that the Court should order either her immediate release or that she be transferred back to Colorado as a reasonable accommodation under the Rehabilitation Act.  [Doc. 3 at 10–13, 21–30].  Respondents raise numerous arguments in opposition to this requested relief, asserting that (1) Petitioner's Rehabilitation Act claim is not cognizable in the habeas context; (2)  there is no private right of action under the Rehabilitation Act's Section 504 against federal agencies; (3) claims of inadequate mental health treatment are not cognizable under

Section 504; and (4) release from custody is not a reasonable accommodation under the Rehabilitation Act.  [Doc. 13 at 14–15].

Neither Party directly addresses the propriety of the vehicle through which Petitioner seeks relief:  a combined habeas petition and civil complaint.  And this Court's independent research did not yield any authority directly on point.

Courts have long distinguished between an attack on a person's confinement *itself*, "which is the appropriate object of a habeas petition," and an attack on the *conditions* of a person's confinement, which is properly raised in a civil rights action.  *Essien v. Barr*, 457 F. Supp. 3d 1008, 1013 (D. Colo. 2020).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  In the Tenth Circuit, a detainee "who challenges the fact or duration of h[er] confinement and seeks immediate release or a shortened period of confinement, must do so through an application for habeas corpus."  *Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012).  Indeed, a request for immediate or speedier release is at "the heart of habeas corpus," *Preiser*, 411 U.S. at 498, and many courts instruct that a habeas petition is the proper vehicle to seek release from custody.  *See, e.g.*, *Basri v. Barr*, 469 F. Supp. 3d 1063, 1070 (D. Colo. 2020) (explaining that "[a] petition for writ of habeas corpus is the exclusive means" to secure immediate release from custody); *Hernandez v. I.C.E.*, 165 F. Supp. 3d 715, 717 (N.D. Ill. 2016) ("[A] prisoner must bring a habeas action when he or she seeks immediate or speedier release from custody.").

On the other hand, persons "who wish to challenge only the conditions of their confinement, as opposed to its fact or duration, must do so through civil rights lawsuits

filed pursuant to 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971)—not through federal habeas proceedings."  *Standifer v. Ledezma*, 653 F.3d 1276, 1280 (10th Cir. 2011); *see also Palma-Salazar*, 677 F.3d at 1038–39; *Essien*, 457 F. Supp. 3d at 1013 (explaining that "a habeas claim may lead to an order releasing the prisoner or detainee or nothing at all; whereas a conditions-of-confinement claimant may only lead to an order requiring the government to improve the conditions of confinement, but not an order releasing the prisoner or detainee").

Insofar as she seeks injunctive relief in the form of her immediate release from ICE custody, the Court finds that Petitioner's Rehabilitation Act claim is simply a repackaged habeas request.  Indeed, Ms. Villatoro Fuentes attacks the very *fact* of her confinement in seeking that relief under the Rehabilitation Act:

> Respondent's continued detention of Ms. Villatoro Fuentes, an individual with disabilities, denies her equal access to immigration proceedings and requires a reasonable accommodation under Section 504 and its implementing regulations.  Release is the only reasonable accommodation that will allow Ms. Villatoro Fuentes to be able to meaningfully participate in her immigration proceedings.  Respondents' continued detention of Ms. Villatoro Fuentes without allowing her the reasonable accommodation of release to obtain the recommended course of psychiatric treatment violates Section 504 and its implementing regulations.

[Doc. 1 at ¶¶ 105–07 (citations omitted)]; *see also* [Doc. 3 at 10 ("Ms. Villatoro Fuentes seeks release as a reasonable accommodation under Section 504.")].  And the Court has located no authority demonstrating that Petitioner can request release from custody under the Rehabilitation Act outside of the habeas context, nor has she provided any such authority to the Court.  And as explained above, the Court lacks jurisdiction over Petitioner's Petition for habeas relief, which includes her repackaged Rehabilitation Act claim.

The Court reaches the opposite conclusion with respect to the other half of Petitioner's Rehabilitation Act claim, in light of both the nature of the claim and the relief requested.  Ms. Villatoro Fuentes alternatively requests that she be transferred back to Colorado as a reasonable accommodation under the Rehabilitation Act.  [Doc. 1 at 54; Doc. 3 at 26–30].[11]  This is more akin to a conditions-of-confinement civil rights claim, as Petitioner argues that her placement in a Texas hospital for mental health treatment— which is essentially a condition of her confinement—precludes her from meaningfully accessing and assisting with her immigration proceedings.  [Doc. 3 at 26].  And the requested relief is not a release from custody, but rather an "order requiring the government to improve the conditions of confinement" by ordering her transfer back to Colorado.  *Essien*, 457 F. Supp. 3d at 1013.

The Court must determine, then, the propriety of Petitioner's method of requesting this relief.  Based on this Court's research and review of the limited available caselaw, courts are split as to whether they permit litigants to file combined habeas petitions and complaints.  *See, e.g.*, *Malcom v. Starr*, No. 0:20-cv-02503-MJD-LIB, 2021 WL 931213, at *2 (D. Minn. Mar. 11, 2021) (holding that the petitioner could not file a combined pleading due to the "different and incompatible rules regarding service of process, discovery, and even filing fees" between habeas petitions and civil complaints); *Gyetvai v. Moran*, No. 3:18-cv-00814-RDM, 2019 WL 4747050, at *2 (M.D. Pa. Sept. 27, 2019) (liberally construing a pro se complaint as a combined civil rights complaint and habeas

---

[11] Ms. Villatoro Fuentes also requests that the Court enjoin Respondents from placing her in solitary confinement, [Doc. 1 at 54], but she does not request this relief in her Motion for Temporary Restraining Order, *see* [Doc. 3].  Accordingly, the Court does not address this requested relief.

corpus petition under § 2254).  The Tenth Circuit has previously permitted pro se prisoner litigants to raise habeas claims and civil rights claims in the same filing, *if* the movant complies with the "applicable procedural requirements."  *See Whitmore v. Parker*, 484 F. App'x 227, 240 (10th Cir. 2012) (collecting cases); *cf. Richards v. Bellmon*, 941 F.2d 1015, 1019 n.3 (10th Cir. 1991) ("A single complaint may seek relief partly under § 2254 and partly under § 1983.").

Here, the Court is not convinced that Petitioner has complied with the applicable procedural requirements required to properly present her Rehabilitation Act claim to the Court.  At the inception of this case, Ms. Villatoro Fuentes paid the $5 filing required for habeas petitions.  *See* [Doc. 1]; *see also* 28 U.S.C. § 1914(a); United States District Court for the District of Colorado, Office of the Clerk of Court, Fee Schedule – Effective January 1, 2024, available at http://www.cod.uscourts.gov/CourtOperations/FeeSchedule.aspx. However, the filing of a civil complaint carries a substantially higher filing fee of $350.00, *see* 28 U.S.C. § 1914(a), plus a $55 processing fee, for a total of $405, *see* United States District Court for the District of Colorado, Office of the Clerk of Court, Fee Schedule – Effective January 1, 2024.  While the failure to pay the appropriate filing fee does not raise jurisdictional concerns, "[t]he filing fee requirement . . . is established by Congress as a prerequisite to a civil action and must be complied with, absent the granting of IFP status," *Jarrett v. US Sprint Commc'ns Co.*, 22 F.3d 256, 261 (10th Cir. 1994), and Petitioner has neither complied with the filing requirement for her substantive Rehabilitation Act claim nor obtained leave of Court to proceed in forma pauperis.  The Court is reluctant to address the merits of Petitioner's substantive claims when those claims are not properly before the Court.  If she wishes to pursue her substantive

Rehabilitation Act claim, she must pay the required filing fee for a civil complaint. *See Perales v. United States*, No. 0:14-cv-01722-JNE-JJG, 2014 WL 3384698, at *4 (D. Minn. July 10, 2014) ("If Petitioner elects to pursue the claims in a civil rights action, he will have to either pay the $400 filing fee or file an application to proceed without prepayment of fees. Petitioner cannot be excused from paying the filing fee by simply calling his pleading a habeas corpus petition, rather than a civil complaint."); *Jorgenson v. Spearman*, No. 5:16-cv-00455-JLS-KS, 2016 WL 2996942, at *1 (C.D. Cal. May 22, 2016) (declining to construe pro se habeas petition as a civil rights actions because, among other reasons, "prisoner civil rights actions are subject to a $350 filing fee, as compared to the substantially lower $5 filing fee for habeas petitions").

Mindful that Petitioner seeks emergency relief, however, and recognizing that this Court could simply order Petitioner to pay the full filing fee before ruling on the Motion for Temporary Restraining Order, the Court addresses her request for injunctive relief under the Rehabilitation Act. As mentioned above, Ms. Villatoro Fuentes asks the Court to order her transfer back to Colorado as a reasonable accommodation under the Rehabilitation Act. However, the Motion for Temporary Restraining Order does not demonstrate any clear and unequivocal right to the extraordinary relief requested. More specifically, with respect to her Rehabilitation Act claim, Ms. Villatoro Fuentes addresses only one of the four factors required for preliminary relief—irreparable harm—and only in the context of her request for immediate release from custody. *See* [Doc. 3 at 10–13]. And while her arguments concerning her entitlement to a reasonable accommodation under the Rehabilitation Act could be construed as addressing the likelihood of success of her claim, she does not address the other factors. *See* [*id.* at 21–30 (arguing that Respondents

violated the Rehabilitation Act by transferring her out of Colorado and arguing that transfer back would be a reasonable accommodation, but not specifically addressing any of the other preliminary injunction factors)]; *see also* [*id.* at 18–21 (addressing the balance of equities and public interest factors, but only in the context of Plaintiff's constitutional claim and request for habeas release).

Temporary injunctive relief is an extraordinary remedy, *Winter*, 555 U.S. at 24, and Petitioner's right to relief must be clear and unequivocal, *Schrier*, 427 F.3d at 1258.  To show an entitlement to the relief requested, Petitioner cannot disregard her obligation to demonstrate that each of the four factors weighs in her favor.  *Sierra Club*, 539 F. App'x at 888; *cf. Franco-Gonzales v. Holder*, 767 F. Supp. 2d 1034, 1060 (C.D. Cal. 2010) (in habeas case, ordering preliminary injunctive relief in the form of Rehabilitation Act accommodation for immigration proceedings *after* considering the four factors and deciding that they weighed in the movant's favor).

Furthermore, while the Motion for Temporary Restraining Order spends much time discussing the Rehabilitation Act generally, it does not cite any cases showing that this Court has the authority to order that Petitioner be transferred back to Colorado or any cases where courts granted the requested relief under the Rehabilitation Act.[12]  *See* [Doc.

---

[12] Petitioner cites to *Palamaryuk ex rel. Palamaryuk v. Duke*, 306 F. Supp. 3d 1294 (W.D. Wash. 2018), describing the case as "preventing petitioner's transfer while in ICE custody as an accommodation under Section 504, finding that he needed 'an accommodation to enjoy meaningful access to benefits by alleging that his disability requires face-to-face meetings with his attorney.'"  [Doc. 3 at 21 (quoting *Palamaryuk*, 306 F. Supp. 3d at 1301)].  However, the cited decision did not order any injunctive relief.  Rather, it addressed the merits of the defendant's motion to dismiss under Rule 12(b)(6), concluding that the plaintiff had adequately alleged that he was denied a reasonable accommodation under the Rehabilitation Act.  *See Palamaryuk,* 306 F. Supp. 3d at 1301.  Her citation to the same decision for the proposition that it "[held] that detained noncitizen should be granted accommodation being housed near his counsel to facilitate face-to-

3 at 21–22]. Courts in general are reluctant to intrude on the administrative aspects of institutional facilities. *Cf. Turner v. Safley*, 482 U.S. 78, 85 (1987) ("Prison administration is . . . a task that has been committed to the responsibility of [the legislative and executive] branches, and separation of powers concerns counsel a policy of judicial restraint."); *St. Louis v. Martin*, No. 2:20-cv-00349-TPB-NPM, 2020 WL 13547815, at *6 (M.D. Fla. May 26, 2020) (where detainees challenged conditions of ICE custody, explaining that "it is not the Court's function to second-guess administrative decisions, especially in an institutional setting"). These same principles are applicable in the ICE custodial context, too. "The Attorney General is mandated to 'arrange for appropriate places of detention for [persons] detained pending removal.'" *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (quoting 8 U.S.C. § 1231(g)(1)). The Tenth Circuit has held that "a district court has no jurisdiction to restrain the Attorney General's power to transfer [ICE detainees] to appropriate facilities by granting injunctive relief in a *Bivens* class action suit," *id.*, and the Court has located no authority to suggest that the Tenth Circuit would hold differently in the context of a Rehabilitation Act suit. *See also Olola v. U.S. Att'y Gen.*, No. 18-cv-

---

face meetings required for meaningful participation in his removal proceedings," [Doc. 3 at 25–26], is likewise not accurate. And while the *Palamaryuk* court did issue a temporary restraining order early in the case to enjoin the plaintiff's transfer outside of the Western District of Washington, the court did so using a modified preliminary injunction standard that asked whether "'serious questions going to the merits were raised and the balance of the hardships tip[ped] sharply in the plaintiff's favor,' thereby allowing preservation of the status quo when complex legal questions require further inspection or deliberation." *See Palamaryuk ex rel. Palamaryuk v. Duke*, No. 2:17-cv-00441-MJP-JPD (W.D. Wash) [ECF No. 7 (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011))]. The Tenth Circuit has criticized the use of a similar modified test upon concluding that the modified test is inconsistent with the Supreme Court's decision in *Winter*. *See Diné*, 839 F.3d at 1281–82; *see also Flathead-Lolo-Bitterroot Citizen Task Force v. Montana,* 98 F.4th 1180, 1190 n.12 (9th Cir. 2024) (stating that "the Tenth Circuit has joined the Fourth Circuit in rejecting [the relaxed] test as invalid under *Winter*" (citing *Diné*, 839 F.3d at 1282)).

00058-LTB-GPG, 2018 WL 11446892, at *4 (D. Colo. Feb. 22, 2018) (declining to enter an order enjoining ICE detainee's transfer from one facility to another because such administrative decisions "are within the discretion of the Attorney General and therefore may not be reviewed or enjoined by the federal district courts").

To be clear, this Court does not definitively hold that it is without any authority to direct the transfer of Ms. Villatoro Fuentes back to the Aurora detention facility.  Rather, the Court simply recognizes the extraordinary relief requested by Petitioner—a mandatory injunction that would require this Court to interfere in the administration of the detention facilities—and concludes that Petitioner has not provided the Court with authority showing that the Court can grant the requested relief and has not met her burden of demonstrating her entitlement to this extraordinary relief at this juncture.

## III.    Relief under the *Orantes* Injunction

Finally, Plaintiff contends that she is entitled to immediate transfer back to the state of Colorado pursuant to the *Orantes* injunction.  [Doc. 3 at 30].  For the reasons set forth above, Petitioner has not demonstrated that the Court can enter such relief.  Nor is it clear whether this request is brought pursuant to Plaintiff's civil Complaint or her now-dismissed habeas Petition.  But for purposes of completeness, the Court will briefly address this argument.

By way of background, in 1988, a federal judge sitting in the Central District of California entered a permanent injunction mandating that the Immigration and Naturalization Service "use specific procedures when detaining, processing and removing

Salvadoran immigrants.*"  Orantes II*, 504 F. Supp. 2d at 827.[13]  One such procedure is the requirement that "[w]here a class member is represented by counsel . . ., he or she can be transferred to other locations in accordance with 8 U.S.C. § 1252(c)," but "the class member must be returned to the district in which venue is set sufficiently in advance of any proceeding in order to allow the detainee adequate time to consult with counsel" and "must be returned within a reasonable time after receiving a request to do so from the detainee's counsel."  *Orantes I*, 685 F. Supp. at 1513.  Petitioner argues that the *Orantes* injunction "afforded special procedural protections surrounding detention and access to counsel to persons, like Ms. Villatoro Fuentes, seeking asylum from El Salvador" and that, pursuant to the injunction, "ICE cannot transfer [her] away from her counsel in advance of her hearing on her applications for fear-based relief."  [Doc. 3 at 30].  She argues that she falls within the *Orantes* class, which she defines as "all 'citizens and natives of El Salvador residing in the United States,' who are in immigration custody and who 'have requested, or may in the future request, political asylum.'"  [*Id.* (quoting *Orantes I*, 685 F. Supp. at 1491)].

Respondents assert in their Response that the *Orantes* injunction does not apply to Ms. Villatoro Fuentes because she is not a member of the *Orantes* class.  They argue that the *Orantes* injunction "covers 'all citizens and nationals eligible to apply for political asylum under 8 U.S.C. § 1158,'" and assert that because "Petitioner is in withholding-only proceedings under 8 U.S.C. § 1231(a)(5), she is not eligible to apply to asylum under 8

---

[13] At that time, El Salvador "was embroiled in a twelve-year civil war that killed an estimated 75,000 people between 1980 and 1992, and gave rise to rampant human rights abuses and political violence."  *Orantes II*, 504 F. Supp. 2d at 831.

U.S.C. § 1158."  [Doc. 13 at 7–8 (quoting *Orantes I*, 685 F. Supp. at 1491)].  Petitioner does not respond to this argument in her Reply.  *See* [Doc. 17].

The *Orantes* class was originally conditionally certified as follows:

> All citizens and nationals of El Salvador eligible to apply for political asylum under 8 U.S.C. [§] 1158 who (a) have been or will be taken into custody pursuant to 8 U.S.C. [§] 1357 by agents of the Immigration and Naturalization Service; or (b) subsequent to June 2, 1980, requested, or will in the future request, political asylum within the United States prior to being served with an order to show cause pursuant to 8 C.F.R. [§] 242.1, whose applications for asylum have not or will not be presented to a district director for adjudication in accordance with 8 C.F.R. [§] 208.8.

*Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 366 (C.D. Cal. 1982).  But at the final certification stage, the court ruled that the plaintiffs abandoned their claim as to the latter group, so the permanent *Orantes* injunction covered only the following class:   "[a]ll citizens and nationals of El Salvador eligible to apply for political asylum under 8 U.S.C. § 1158 who . . . have been or will be taken into custody pursuant to 8 U.S.C. § 1357 by agents of the Immigration and Naturalization Service."  *Orantes I*, 685 F. Supp. at 1491; *see also Orantes II*, 504 F. Supp. 2d at 827 ("The original class certified by Judge Kenyon encompassed not only Salvadorans who had been or would be in custody and were eligible to apply for political asylum, but also Salvadorans who, subsequent to June 2, 1980, requested, or would in the future request, political asylum whose claims had not yet been presented or adjudicated.   Plaintiffs later abandoned claims on behalf of the second group of Salvadorans." (citation omitted)).  Thus, the *Orantes* class is limited to those individuals who are "eligible to apply for political asylum under 8 U.S.C. § 1158." *Orantes I*, 685 F. Supp. at 1491.

Under 8 C.F.R. § 1208.31, individuals who have been ordered removed, like Ms. Villatoro Fuentes, may apply "for withholding of removal only."  8 C.F.R. § 1208.31(e).

Courts have thus held that individuals who are subject to removal orders are ineligible to apply for asylum under § 1158.  *See, e.g.*, *Mejia v. Sessions*, 866 F.3d 573, 584 (4th Cir. 2017); *see also R-S-C v. Sessions*, 869 F.3d 1176, 1189 (10th Cir. 2017) (denying petition for review upon concluding that the Attorney General has reasonably concluded that a person ordered removed "is not eligible for asylum relief" and deferring to that interpretation).  Petitioner raises no argument contesting Respondents' ineligibility contentions.  [Doc. 17].

Moreover, Petitioner has not cited any authority demonstrating that this Court may enforce another court's injunction.  *See Baker ex rel. Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 240 (1998) ("[I]njunctions are ordinarily enforced by the enjoining court, not by a surrogate tribunal."); *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 970–71 (11th Cir. 2012) ("[T]he court that issued the injunctive order alone possesses the power to enforce compliance with and punish contempt of that order. . . .  Other courts are without jurisdiction to do so."); *O'Rourke v. Duncan*, No. 4:10-cv-00957-CEJ, 2011 WL 1297546, at *4 (E.D. Mo. Mar. 31, 2011) ("[The] plaintiff cannot seek an injunction to enforce another court's injunction nor can she use a declaratory action to circumvent this well-established rule.").

The Court is empathetic to Petitioner's situation and the significant difficulties she faces being detained away from her counsel.  However, the Court cannot conclude that she has demonstrated her entitlement to the extraordinary relief she requests.  Accordingly, the Motion for Temporary Restraining Order is **DENIED**.

## IV.     Petitioner's Civil Action

While the Court lacks jurisdiction over this case insofar as Ms. Villatoro Fuentes filed a habeas petition, the Court cannot reach that same conclusion with respect to her purported civil claims, notwithstanding the procedural deficiencies identified above.   In light of the rulings in this Order and the exigencies of this case, it is **ORDERED** that a telephonic Status Conference is **SET** for **Friday, June 14, 2024 at 10:00 a.m.** to discuss this case moving forward.  Given the associated time constraints, the Court does not order the Parties to confer prior to the Status Conference, but encourages them to do so.

Should Petitioner seek to proceed with her civil claims in this district, it is **ORDERED** that, within **14 days** of this Order, she must pay the full filing fee for civil complaints and shall file an amended complaint that clearly sets forth her claims for relief and the related relief requested.   It is further **ORDERED** that if Petitioner intends to proceed with her civil claims, Petitioner shall meet and confer with Respondents to discuss the propriety of moving forward with her civil claims in this case.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)    The Verified Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief [Doc. 1], to the extent it is a Petition, is **DISMISSED without prejudice**;

(2)    Petitioner's Motion for Temporary Restraining Order [Doc. 3] is **DENIED**; and

(3)    If Petitioner decides to proceed with her civil claims in this case, she shall file an amended pleading and the required filing fee within **14 days** of this Order, after meeting and conferring with Respondents;

(4)   The Motion for Leave to File a Five-Page Surreply [Doc. 18] is **DENIED as moot**; and

(5)   A telephonic Status Conference is **SET** for **Friday, June 14, 2024, at 10:00 a.m.**  The Parties shall participate using the following dial-in information:  **888-363-4749; Access Code: 5738976#**.

DATED:  June 13, 2024                                    BY THE COURT:

                                                        Nina Y. Wang
                                                        United States District Judge